UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 17-CV-3330 (JFB) (AYS)
_____

DONOVAN J. CLARKE,

Plaintiff,

VERSUS

ALLTRAN FINANCIAL, LP F/K/A UNITED RECOVERY SYSTEMS, LP,

Defendant.

_____

**MEMORANDUM AND ORDER**
February 22, 2018
_____

JOSEPH F. BIANCO, District Judge:

 Plaintiff Donovan J. Clarke ("plaintiff" or "Clarke") brings this putative class action against Alltran Financial, LP, formerly known as United Recovery Systems, LP ("defendant" or "Alltran") under the Fair Debt Collection Practices Act ("the FDCPA"), 15 U.S.C. § 1692 *et seq.* Clarke claims that Alltran violated the FDCPA by sending him an allegedly false and misleading debt collection letter relating to amounts owed on his Citibank credit card.

 Presently before the Court is Alltran's motion to compel arbitration on an individual basis under the credit card agreement between Clarke and Citibank—to which Alltran is not a signatory. The parties' dispute centers on whether Alltran, as a non-signatory, can compel arbitration under that agreement. Alltran asserts that it can compel arbitration (1) based on the plain language of the card agreement; (2) as a third-party beneficiary; (3) as Citibank's agent; and (4) under the doctrine of equitable estoppel. Clarke, in turn, disputes each of these grounds.

 For the reasons that follow, the Court concludes that Alltran can compel arbitration under the card agreement's plain language, and, alternatively, as Citibank's agent. Because the Court concludes that Alltran can compel arbitration on these grounds, it does not reach Alltran's additional grounds.

The Court further concludes that whether arbitration must proceed on an individual basis under the card agreement's class action waiver is for the arbitrator to decide.

Finally, the Court stays this action pending the arbitration.

I. BACKGROUND

A. Facts

The Court takes the following facts from the complaint, the Declaration of Terri Montgomery ("Montgomery Decl.") filed in support of defendant's motion to compel arbitration, and the exhibits thereto.[1]

In October 2014, Citibank issued plaintiff a credit card. (Montgomery Decl. ¶ 11.) In connection with obtaining the credit card, plaintiff received a card agreement that governed his account. (*Id.* ¶ 7.) The card agreement provided that Clarke agreed to be bound by its terms by either using the credit card or failing to cancel the credit card within thirty days of receiving it. (Montgomery Decl. Ex. 1 at 1.) The card agreement also contained a broad arbitration provision that stated, in relevant part:

> PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.
>
> ***Agreement to Arbitrate:*** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to

---

[1] The Court may properly consider documents outside of the pleadings for purposes of deciding a motion to compel arbitration. *See BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06 Civ. 839(HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration." (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32-33 (2d Cir. 2001))).

2

arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir assignee, or trustee in bankruptcy.

**Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

(*Id.* at 9-10.)

At some point before December 2015, plaintiff allegedly failed to make payments on his Citibank credit card (Compl. ¶¶ 13, 16), and Citibank "retained and authorized" Alltran to collect the amount owed (Montgomery Decl. ¶ 6). To that end, Alltran sent a debt collection letter to plaintiff on June 3, 2016. (*See* Compl. Ex. A.) Clarke alleges that the letter was false and misleading in violation of the FDCPA. (Compl. ¶¶ 29-51.)

B. Procedural History

Plaintiff filed the complaint on June 2, 2017. (ECF No. 1.) Defendant moved to compel arbitration on August 2, 2017. (ECF No. 12.) Plaintiff opposed defendant's motion on August 23, 2017. (ECF No. 16.) Defendant replied on September 15, 2017. (ECF No. 18.) On September 29, 2017, plaintiff submitted a notice of supplemental authority to the Court. (ECF No. 19.) Defendant submitted a response to that notice on October 24, 2017. (ECF No. 21.) The Court heard oral argument on November 2, 2017, and has fully considered the parties' submissions and arguments.

II. STANDARD OF REVIEW

Courts evaluate motions to compel arbitration under a standard similar to that for summary judgment motions. *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n.9 (3d Cir. 1980)); *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010); *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 614 (E.D.N.Y. 2011). The court must "consider all relevant admissible evidence" and "draw all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4). If, however, the arbitrability of the dispute can be decided as a matter of law based on the undisputed facts in the record, the court "may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) (quoting *Bensadoun*, 316 F.3d at 175).

3

## III. DISCUSSION

### A. The Card Agreement's Plain Terms Allow Alltran to Compel Arbitration

The Federal Arbitration Act mandates that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This statutory provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms," *id.* (citation omitted), including "terms that 'specify with whom the parties choose to arbitrate their disputes,'" *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010)).

"[T]he interpretation of an arbitration agreement is generally a matter of state law." *Stolt-Nielsen S.A.*, 559 U.S. at 681. At the same time, "in applying general state-law principles of contract interpretation . . . to an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) (citation omitted).

Under South Dakota law,[2] "[t]he goal of contract interpretation is to determine the parties' intent." *Tri-City Assocs., L.P. v. Belmont, Inc.*, 845 N.W.2d 911, 915 (S.D. 2014). To do so, courts must examine contracts "as a whole" and "give words their 'plain and ordinary meaning.'" *Coffey v. Coffey*, 888 N.W.2d 805, 809 (S.D. 2016) (citations omitted). Further, courts must interpret contracts to give "a reasonable and effective meaning" to all terms, *id.*, and not "in a manner that renders a portion of [the contract] meaningless," *Tri-City Assocs.*, 845 N.W.2d at 915 (quoting *Estate of Fisher v. Fisher*, 645 N.W.2d 841, 846 (S.D. 2002)).

Plaintiff argues that Alltran cannot compel arbitration here because the card agreement's plain terms do not allow non-signatories to do so. In support, plaintiff points to two provisions of the card agreement: the definitions section and the paragraph entitled "Agreement to Arbitrate." The latter states, "Either *you or we* may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called 'Claims')." (Montgomery Decl. Ex. 1 at 9 (emphasis added).) The card agreement defines "you" as "the person who applied to open the account" and "us" as "Citibank, N.A., the issuer of your

---

[2] The card agreement provides that "Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement." (Montgomery Decl. Ex. 1 at 13.) "Contractual choice of law provisions are generally enforceable under both New York law and federal common law." *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 108 (2d Cir. 2017) (collecting cases); *see also Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500 (N.Y. 2006). Moreover, the parties do not dispute that the FAA and South Dakota law apply. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) ("[T]he parties' briefs assume that New York law controls this issue, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000))). Thus, a lengthy choice-of-law analysis is unnecessary, and the Court will analyze the card agreement under the FAA and South Dakota law.

Account." (*Id.* at 1.) Plaintiff argues that, read together, these provisions mandate that *only* Clarke ("you") or Citibank ("we") can compel arbitration under the card agreement, and that Alltran thus cannot compel arbitration here.

Alltran asserts that Clarke's argument is flawed under well-established principles of contract interpretation. In particular, Alltran argues that plaintiff's interpretation fails to examine the card agreement as a whole and would render provisions of the card agreement meaningless. According to Alltran, when read in its entirety, the card agreement allows certain third parties, including Alltran under these circumstances, to compel arbitration.

The Court concludes that Alltran can compel arbitration under the plain language of the card agreement. As an initial matter, the paragraph entitled "Agreement to Arbitrate" is not as limited as plaintiff asserts. That provision states that either Clarke or Citibank may elect arbitration; it does not state that *only* Clarke or Citibank may do so. Under basic principles of contract interpretation, the Court may not read the word "only" into the card agreement in order to resolve this dispute. *See, e.g.*, *Edgar v. Mills*, 892 N.W.2d 223, 231 (S.D. 2017) (explaining the "well-established rule that in ascertaining the parties' intent, we will not rewrite the parties' contract or add to its language"); *Gettysburg Sch. Dist. 53-1 v. Larson*, 631 N.W.2d 196, 200-01 (S.D. 2001) ("[Contract] disputes cannot be resolved by adding words the parties left out.").

Further, plaintiff's interpretation of the card agreement would render the provision entitled, "Whose Claims are subject to arbitration?" superfluous. As noted above, that provision states that "[c]laims made by or against anyone connected with us or you or claiming through us or you . . . such as an agent, [or] representative" are subject to arbitration. (Montgomery Decl. Ex. 1 at 9.) If, as plaintiff asserts, only Clarke or Citibank could compel arbitration under the card agreement, that provision would serve no purpose. In other words, there would be no need for a provision about "[w]hose claims are subject to arbitration" if the paragraph entitled "Agreement to Arbitrate" was intended to foreclose anyone other than Clarke and Citibank from bringing an arbitration under the agreement.[3]

Moreover, the arbitration provision states that it is to be interpreted in "the broadest way the law will allow it to be interpreted." (*Id.*) Plaintiff's interpretation drastically narrows the arbitration provision by limiting its availability to only the cardholder and Citibank. On the other hand, Alltran's interpretation gives effect to the expressed intent that the arbitration provision be applied broadly.

Thus, reading the card agreement as a whole, and giving reasonable effect to all of its terms, the Court concludes that the card agreement allows anyone "connected with"

---

[3] At oral argument, plaintiff's counsel asserted that plaintiff's interpretation would not render the provision entitled "Whose Claims are subject to arbitration?" superfluous. Specifically, he argued that, under plaintiff's interpretation, the provision operates to give "great scope" to the types of claims that only Clarke and Citibank can compel to arbitration. The Court is not persuaded. Under that interpretation, Clarke could avoid arbitration by, for example, suing one of Citibank's employees for conduct that Citibank might ultimately be financially responsible for, but not naming Citibank as a defendant. It would be irrational for Citibank to agree to such a readily-circumvented provision. *See, e.g.*, *Nelson v. Schellpfeffer*, 656 N.W.2d 740, 743-44 (S.D. 2003) (courts should avoid contract interpretations that produce "result[s] that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed upon").

5

Clarke or Citibank, such as an "agent" or "representative," to compel arbitration.

Finally, the Court concludes that Alltran's relationship with Citibank is sufficient to establish that Alltran is "connected with" Citibank under the card agreement. As explained in a declaration submitted by a Citibank employee, Citibank "retained and authorized" Alltran to collect amounts owed to Citibank on Clarke's Citibank credit card. (Montgomery Decl. ¶ 6.) Alltran's collection letter makes clear that Alltran sent the letter in an attempt to collect a debt on behalf of Citibank. (*See* Compl. Ex. A.) That letter further instructs Clarke to remit payment to Citibank, and indicates that Citibank had authorized Alltran to negotiate on behalf of Citibank to settle the debt. (*Id.*) The Court, thus, concludes that the relationship between Citibank and Alltran satisfies the "connected with" language in the card agreement.[4]

Plaintiff argues that *White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017) and *Pacanowski v. Alltran Financial, L.P.*, 271 F. Supp. 3d 738 (M.D. Pa. 2017), which both involved the card agreement at issue here, mandate a different conclusion. The Court disagrees. In *White*, the plaintiff claimed that Sunoco had fraudulently induced him, via marketing materials, to obtain a Sunoco Rewards Card from Citibank. 870 F.3d at 260. The district court concluded that Sunoco could not compel arbitration under the card agreement between the cardholder and Citibank because "[p]laintiff's claims against Sunoco [we]re governed by an entirely separate agreement between him and Sunoco—an agreement that ma[de] no mention of arbitration." *White v. Sunoco*, 189 F. Supp. 3d 486, 496 (E.D. Pa. 2016). On appeal, a majority of the Third Circuit affirmed, basing that holding on principles of equitable estoppel. 870 F.3d at 265. The Third Circuit's analysis of the card agreement's plain language was in dicta addressing Sunoco's alternative arguments on appeal. *See id.* at 266-68. Moreover, the Third Circuit's interpretation of the card agreement was justified by the fact that the provision regarding "[w]hose claims are subject to arbitration," when "read in context, suggests that the parties did not intend for it to govern an entity with merely a marketing relationship with Citibank." *Id.* at 268. *White* thus involved a separate agreement between the plaintiff and the defendant, a tenuous relationship between the defendant and Citibank, and claims wholly unrelated to the card agreement between the plaintiff and Citibank. Therefore, the Court does not find *White* to be persuasive.[5] For the same reason, the Court respectfully disagrees with the district court's opinion in *Pacanowski*, which relied solely on *White* to support its interpretation of the card agreement. *See* 271 F. Supp. 2d at 745-46.

---

[4] These facts distinguish *McGinnis v. John C. Bonewicz, P.C.*, No. 11-2210, 2012 WL 604430 (C.D. Ill. Feb. 2, 2012), *adopted by* No. 11-2210, 2012 WL 604427 (C.D. Ill. Feb. 24, 2012). In that case, Citibank sold the at-issue credit card debt to a company that then hired a law firm to attempt to collect the debt. *Id.* at *1. The cardholder sued the law firm, which sought to compel arbitration under the card agreement. *Id.* Thus, *McGinnis* involved an additional level of separation between Citibank and the non-signatory defendant seeking to compel arbitration, and the court's conclusion that the law firm was "not within the definition of a party who may elect arbitration," *id.*, is consistent with this Court's holding.

[5] In any event, to the extent the dicta can be viewed as inconsistent with this Court's ruling, this Court finds Judge Roth's dissent in *White* to be persuasive. 870 F.3d at 268-72. In interpreting the card agreement, Judge Roth rejected the same arguments advanced by Clarke here and concluded that "the contract, read as whole, does not restrict the ability to arbitrate to only White and Citibank." *Id.* at 271.

Instead, the Court finds the reasoning of other courts that have allowed third parties to compel arbitration under the identical, or nearly identical, card agreement to be persuasive. *See Fedotov v. Peter T. Roach and Assocs., P.C.*, No. 03 Civ. 8823 (CSH), 2006 WL 692002, \*2 (S.D.N.Y. Mar. 16, 2006) ("The arbitration provisions state that, in addition to claims by or against the Bank or the cardholder, the provisions cover claims 'by or against anyone connected with [the Bank] or [the cardholder],' including an 'agent' or 'representative'. I believe this language is broad enough to encompass the Bank's law firm, engaged to recover credit card debt on the Bank's behalf."); *Garrett v. Margolis, Pritzker, Epstein & Blatt, P.A.*, 861 F. Supp. 2d 724, 728-29 (E.D. Va. 2012) ("The Court next finds that a debt collector acting on behalf of Citibank, as the defendants are in this situation, is covered by the broad contract language under the heading of 'whose claims are subject to arbitration.'"); Order at ¶ 7, *Bowers v. Citibank*, 17-cv-0462 (W.D.N.C. Oct. 19, 2017), ECF No. 14 (finding the same arbitration provision "extend[ed] to and include[d] the Plaintiff's claims against AllianceOne"); Order, *Gold v. Glob. Credit & Collection Corp.*, No. 16-cv-5404 (WFK)(ST) (E.D.N.Y. Apr. 24, 2017) (docket order granting Alltran's motion to compel arbitration under the same card agreement); *Machesky v. United Recovery Sys., L.P.*, No. 16-CV-596, 2016 WL 7635517, \*2 (S.D. Tex. Dec. 23, 2016) (granting Alltran's motion to compel arbitration under the same card agreement); *Wilder v. Midland Credit Mgmt.*, No. 9-CV-2039(JOF)(AJB), 2010 WL 2499701, at \*4 (N.D. Ga. May 20, 2010), *report and recommendation adopted*, 2010 WL 2499659 (N.D. Ga. June 15, 2010) (collecting cases).

In sum, the Court concludes that the card agreement's plain terms allow certain non-signatories—including "anyone connected with" Citibank—to compel arbitration. Because Alltran was retained and authorized by Citibank to attempt to collect amounts allegedly due to Citibank by plaintiff under the card agreement, Alltran is "connected with" Citibank and can compel arbitration here.

B. Alternatively, Alltran can Compel Arbitration as Citibank's Agent

Even if the plain language of the card agreement did not allow Alltran to compel arbitration, the Court concludes that Alltran could do so as Citibank's agent. Under the FAA, "traditional state law principles" may be used by non-signatories to enforce arbitration agreements. *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010). Courts have consistently recognized agency law as one such state law principle. *See, e.g.*, *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997) ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement." (quoting *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir.), *cert. denied*, 510 U.S. 945 (1993))); *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 37 (1st Cir. 2017) (collecting cases).

Specifically, "agents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause (consistent with the language of the arbitration clause)." *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007) (citations omitted) (collecting cases);

7

*see also, e.g.*, *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 11 (1st Cir. 2014) ("[A] number of our sister circuits have addressed this issue, and all have held that an agent is entitled to the protection of her principal's arbitration clause when the claims against her are based on her conduct as an agent."); *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 815 (S.D. 2002) ("The Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior . . . as agents . . . ." (quoting *Hirschfeld Prods. v. Mirvish*, 673 N.E.2d 1232, 1233 (N.Y. 1996))).

Under South Dakota law, an "[a]gency is the representation of one called the principal by another called the agent in dealing with third persons." SDCL § 59-1-1. An agency relationship can be actual or ostensible, *Dakota Provisions, LLC v. Hillshire Brands Co.*, 226 F. Supp. 3d 945, 952 (D.S.D. 2016) (quoting *Kasselder v. Kapperman*, 316 N.W.2d 628, 630 (S.D. 1982)). An actual agency relationship "exists when a principal and agent expressly agree to enter into an agency relationship." *Id.* To determine whether an agency relationship exists, courts must look to "the relations of the parties as they exist under their agreement or acts." *Kasselder*, 316 N.W.2d at 630.

Here, Alltran was acting on behalf of Citibank in attempting to collect the amounts allegedly owed by plaintiff to Citibank under the card agreement. In fact, Citibank submitted a declaration stating that Citibank "authorized and retained" Alltran "for the purpose of collecting the debt due on" plaintiff's credit card. (Montgomery Decl. ¶ 6.) That declaration further states that Alltran collected debts "on behalf of Citibank, and any sums collected by [Alltran] were remitted to Citibank."[6] *Id.* Moreover, the at-issue debt collection letter indicates that Alltran was authorized to "negotiate" with plaintiff "to resolve the debt." (Compl. Ex. A at 1.) These uncontroverted facts establish that Citibank and Alltran agreed to enter into an agency relationship, and that Alltran was acting in its capacity as Citibank's agent when it sent the debt collection letter to plaintiff. *See, e.g.*, *Mendoza v. Ad Astra Recovery Servs. Inc.*, No. 13-CV-06922-CAS, 2014 WL 47777, at *2 (C.D. Cal. Jan. 6, 2014) ("[P]laintiff's claims arise out of Ad Astra's attempts to collect debts owed to Speedy Cash, and thus involve Ad Astra's conduct as an agent of Speedy Cash."); *NattyMac Capital LLC v. Pesek*, 784 N.W.2d 156, 160-61 & n.5 (S.D. 2010) (concluding that the authority to accept a loan payoff established agency relationship and identifying debt collection agencies as agents).[7]

The Court further concludes that plaintiff's claims against Alltran "arise out of or relate to" the card agreement. Specifically, the instant dispute over whether Alltran's debt collection practices

---

[6] These facts apparently were not before the court in *Pacanowski*, which found there was insufficient evidence of an agency relationship between Alltran and Citibank. *See* 271 F. Supp. 3d at 747.

[7] Plaintiff argues that the written agreement between Alltran and Citibank could include a provision stating that Alltran is an independent contractor rather than an agent. Even if that were the case, the Court would still conclude that Alltran was acting as Citibank's agent here because under South Dakota law, "one who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor." *Avera St. Luke's Hosp. v. Karamali*, 848 F. Supp. 2d 1017, 1028 (D.S.D. 2012) (quoting Restatement (Second) of Agency § 14N (1958)); *NattyMac Capital, LLC*, 784 N.W.2d at 161 n.5 ("Although Section 4.01 of the . . . Agreement provided that ACT was an 'independent contractor,' an independent contractor may also be an agent.").

violated the FDCPA arises out of and is related to the credit agreement that created the debt. Numerous other courts have reached the same conclusion. *See, e.g.*, *Cronin v. Portfolio Recovery Assocs., LLC*, No. 815CV00768EAKEAJ, 2016 WL 1756892, at *3 (M.D. Fla. Apr. 29, 2016), *appeal dismissed* (Oct. 11, 2016) (collecting cases); *Mendoza*, 2014 WL 47777, at *2 (collecting cases); *Wilder*, 2010 WL 2499701, at *4 (collecting cases). Thus, because Alltran was acting as Citibank's agent when it sent the at-issue debt collection letter to plaintiff, and because plaintiff's claims relate to the card agreement, Alltran can compel arbitration as Citibank's agent.

C. Whether Arbitration Must Proceed on an Individual Basis is for the Arbitrator to Decide[8]

Finally, Alltran requests that this Court compel arbitration on an individual—as opposed to a class—basis in accordance with the arbitration agreement's class action waiver. As noted above, the card agreement states that, "ARBITRATION REPLACES THE RIGHT TO . . . PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING," and that claims are "subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis." (Montgomery Decl. Ex. 1 at 9.)

"[T]he enforceability of a class action waiver in an arbitration clause is a question of arbitrability that is ordinarily for a court, and not the arbitrator, to decide." *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 4 (2d Cir. 2013) (collecting cases). However, parties may delegate the determination to the arbitrator "so long as the delegation is clear and unmistakable." *E.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 79 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

Here, the arbitration provision subjects to arbitration any "[c]laims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision." (Montgomery Decl. Ex. 1 at 9.) Courts in this Circuit have consistently concluded that similar language constitutes a "clear and unmistakable" delegation. *See, e.g.*, *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 53 (E.D.N.Y. 2017) ("The delegation clause's language that an arbitrator will decide disputes 'arising out of or relating to interpretation or application of this Arbitration Provision, including [its] enforceability, revocability or validity,' clearly and unmistakably delegates the gateway issues to the arbitrator." (alteration in original) (collecting cases)); *Kuehn v. Citibank, N.A.*, No. 12 CIV. 3287 DLC, 2012 WL 6057941, at *4 (S.D.N.Y. Dec. 6, 2012) ("The arbitration agreement between the parties in this case provides that '[c]laims relating . . . to application, enforceability or interpretation of my Account, including this arbitration provision' are subject to arbitration. This provision plainly delegates resolution of questions about the arbitration agreement's enforceability to an arbitrator."). Thus, the

---

[8] Plaintiff's opposition also briefly argues that the instant claims do not fall within the card agreement's scope. To the extent plaintiff's argument is not foreclosed by the Court's contract and agency analyses here, that dispute would also be for the arbitrator to resolve given the language of the arbitration clause discussed *infra*. *See, e.g.*, *Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 JFB GRB, 2014 WL 3013294, at *9 (E.D.N.Y. July 3, 2014) ("[T]he arbitration clause calls for arbitration of 'any claim, dispute, or controversy' arising out of the agreements, 'including the validity or enforceability of this arbitration clause.' Under clear Second Circuit precedent, this language clearly and unmistakably evinces the parties' intent to submit questions of arbitrability—including scope—to arbitration." (collecting cases)).

arbitration provision here clearly and unmistakably delegates issues concerning the class action waiver's enforceability to the arbitrator.[9]

D. This Action is Stayed

Under the FAA, "the court 'shall' stay proceedings pending arbitration, provided certain conditions are met." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir.), *cert. denied*, 136 S. Ct. 596 (2015) (citing 9 U.S.C. § 3). The Second Circuit has held that this language "mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Id.* Accordingly, because the Court refers all of the instant claims to arbitration, and because defendant has requested a stay, the Court stays the action pending arbitration.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to compel arbitration, but reserves issues concerning the enforceability of the card agreement's class action waiver for the arbitrator. This action is stayed pending arbitration.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Date:  February 22, 2018
       Central Islip, NY

\*   \*   \*

Plaintiff is represented by Ryan L. Gentile and Gus Michael Farinella of the Law Offices of Gus Michael Farinella, PC, 110 Jericho Turnpike, Suite 110, Floral Park, NY 11001. Defendant is represented by Denise Lynne Plunkett and Adam Patrick Hartley of Ballard Spahr LLP, 919 Third Avenue, New York, NY 10022.

---

[9] The delegation clause does not, however, clearly and unmistakably delegate the issue of whether Alltran can compel arbitration under the card agreement to the arbitrator. *See, e.g.*, *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005) ("In order to decide whether arbitration of arbitrability is appropriate, a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the agreement."); *Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 291 (S.D.N.Y. 2016) (collecting cases and concluding that "it is for the Court, not an arbitrator, to make a threshold determination here whether Trading is a third-party beneficiary to the Settlement Agreement entitled to enforce the Arbitration Clause.").